UNITED STATES *v.* PATTON *et al.*[1]

*(District Court, E. D. Pennsylvania. May 7, 1891.)*

1. CUSTOMS DUTIES—ENTRY AND CLASSIFICATION—CHANGE BY CUSTOMS OFFICER.
   The action of the customs officer in placing goods in a class other than that in which they were entered, in deciding that they were altered from the ordinary condition in which they were customarily imported in 1883, and that such alteration was made to evade duty, is *prima facie* evidence of each of these facts.

2. SAME—"WOOL WASTE."
   "Wool waste," as employed in the tariff acts, signifies such parts or particles of wool as are thrown off in the several processes of manufacture of wool in wool or worsted fabrics, and does not include wool which has been prepared for spinning,

[1] Reported by Mark Wilks Collet, Esq., of the Philadelphia bar.

and artificially and intentionally made into a form like such parts or particles, even if sometimes called "waste" by the trade.

3. SAME—"WOOL TOPS."

"Wool tops" torn up into fragments are not a "manufacture of wool."

4. SAME—"WOOL SCOURED."

If wool is imported scoured, although in a form not commercially known as "scoured wool," and if its condition is different from that in which wool was customarily imported prior to the date of the act of 1883, it is dutiable as "wool scoured, other than ordinary conditions."

5. SAME—CHANGE TO EVADE DUTY—DOUBLE DUTY.

Where wool imported has been changed from one condition to another for the purpose of evading duty, whether the condition in which it was entered was a customary condition in which wool was imported prior to the date of the act of 1883, or not, it is subject to double duty.

At Law.

This was an action for the recovery of an alleged balance of customs duties due upon importations of so-called "wool waste" entered by the defendants into the port of New York upon November 26, 1888, November 30, 1888, and January 15, 1889. The goods were entered as wool waste under T. I. New, par. 361, Act March 3, 1883, woolen rags, shoddy, mungo, and flocks, ten cents per pound, and were returned as "broken top," "scoured wool," first class, in other than ordinary condition, under T. I. New, par. 356, sixty cents per pound. Plaintiffs produced in evidence depositions of witnesses taken in Bradford and Liverpool, England, on behalf of the plaintiff, testifying that the article in question was made by breaking by hand the "top" into small pieces about 12 inches in length, so as to resemble wool waste, and that it required the work of two or three men for several days to so break the "top," for the importation in suit. These depositions also tended to show that such a practice had grown up since 1888 only, and that it was established for the purpose of exportation to this country. Some of the witnesses also testified that the commercial name of the article was "broken top waste," and others that it was known as "broken top." The plaintiff also produced the testimony of wool merchants of this country that the condition of the article in question was not the ordinary condition in which wool was imported into the United States at or about March 3, 1883; that it was not known as "wool waste" at that period, and that it could be used either directly through the gilling-machine or upon the carding-machine without being first scoured. Defendant produced witnesses who testified that the article was bought, sold, and used in trade under the name of "waste."

*William Wilkins Carr*, Asst. U. S. Atty., and *John R. Read*, U. S. Atty., for plaintiff, presented the following points:

(1) If you believe that the article in suit was not bought, sold, and used in trade in March, 1883, under the name of "wool waste," then your verdict should by for the plaintiff. (2) If you believe that the article in suit is in any other than the original condition in which wool was imported prior to the passage of the act of March 3, 1883, then your verdict should be for the plaintiff. (3) If you believe that the article in suit is wool, and was changed in its character or condition for the purpose of evading the duty upon importation to this country, then your verdict should be for the plaintiff. (4) If you believe that the trade meaning of "wool waste" is that which is thrown off in the manufact-

ure of wool into woolen fabric, and if you believe that the article in suit is not so thrown off but is broken up by hand from wool top, and is no legitimate or natural product of the process of woolen manufacture, then your verdict should be for the plaintiff. (5) If you find that the article in suit was something materially more than and different from the article usually known in the trade and commerce by importers and large dealers in this country under the trade designation of "woolen waste" in March 3, 1883, then your verdict should be for the plaintiff. (6) The verdict in this case should be for the plaintiff.

*Frank P. Prichard* and *John G. Johnson*, for defendant,' presented the following points:

(1) The evidence of both plaintiff's and defendants' witnesses being that the article imported was not scoured wool, it was not liable to duty as such, and your verdict should be for defendant. (2) There being no evidence that the article imported was scoured wool put into extraordinary condition for importation, but, on the contrary, the evidence on both sides being that the article imported was an article known as "waste" or "broken top," manufactured by breaking up another article of commerce, known as "wool-top," which had been manufactured for general purposes by a series of processes from wool, your verdict should be for defendant. (3) The words "woolen rags, shoddy, mungo, waste, and flocks," used in the tariff act, are to be interpreted in their commercial sense, and whether the destruction of the wool tops was accidental or intentional, if the resultant product was commercially known as "waste," it was dutiable as such. (4) Even if the imported article was not produced before the tariff act of 1883 was passed, yet if when produced it was, according to the commercial understanding, included in the commercial designation of "waste," it was dutiable as such. (5) If the imported article was intentionally manufactured from wool, then even though that fact took it out of the legal definition of the word "waste" as used in the tariff act, it would be dutiable only as a "manufacture of wool," and your verdict must therefore be for defendant.

BUTLER, J., (*charging jury orally.*) It is very unsatisfactory that the court, at the close of a trial such as this, should be called upon to submit the case to the jury, involving, as it does, important questions of law, without greater opportunity for examination than is afforded. I must, however, submit the case to you upon the impressions which have been made on my mind while listening to the testimony and to the addresses of counsel. The importation in question was brought to this country by the defendants, and entered at the custom house as "wool waste." On examination by the proper customs officers, it was classified as "wool scoured," which is liable to a duty of 30 cents per pound, and was assessed at double that sum,—to-wit, 60 cents per pound,—under the following provisions of paragraph 356 of the tariff act of 1883:

"The duty upon wool * * * which shall be imported in any other than ordinary condition as now and heretofore practiced, or which shall be changed in its character or condition, for the purpose of evading the duty, * * * shall be twice the amount to which it would otherwise be subject."

In other words, these officers of the government decided that the importation was "wool scoured," brought here in "other than the ordinary condition" in which it was the practice to import such wool at the date of the statute, March, 1883, and previously, and also decided that its

condition had been changed to evade the payment of duty. The defendants having paid the amount to which the wool was liable as "waste," only, the government sued, and is now seeking to recover the balance due according to the decision and assessment stated. The only question for consideration is: Was the assessment right? The decision of the customs officers must be regarded as right, and allowed to stand, until shown to be wrong. The burden of showing this is on the defendants. They must show it, or pay what is now demanded.

The defendants assert, *First*, that the article is "wool waste;" *secondly*, that if it is not, it is a "manufacture of wool; *thirdly*, that if it is neither of these articles it is not "wool scoured." If either of these assertions is proved, the defense is made out, and the government cannot recover. Does the evidence prove it to be "wool waste," within the meaning of this term as employed in the statute? The interpretation of the statute is for the court; and I instruct you that the term "wool waste," as there employed, signifies such parts or particles of the wool as are thrown off in the several processes of its manufacture into woolen and worsted fabrics. According to the testimony on both sides such alone was known as "wool waste" at the date of the statute, and prior thereto. The importation in question, though called "wool waste," seems to be so called only because of its resemblance to what was formerly known by this designation. It does not consist of refuse or broken particles thrown off in the process of manufacture, as before described, but is made, intentionally, by tearing up what are called "wool tops," which consist, as you have seen, of wool which has been put through several processes, and prepared for spinning. The term "waste" as the statute employs it, does not embrace this commodity. Is it a "manufacture of wool," such as the term "manufacture," used in the statute, contemplates? In the judgment of the court it is not. Without undertaking to define particularly what this term does embrace, it is sufficient to say that it does not include these torn fragments of "wool tops." It may be questioned, possibly, whether "tops" themselves, are embraced; whether the term includes anything short of a fabric virtually completed for use. But granted that it embraces "tops," it does not embrace their fragments, when destroyed. Such fragments cannot, therefore, be said to constitute a "manufacture," within the meaning of the language, as employed in the statute. It would be useless to enlarge on the subject.

We come now to the third of defendants' allegations—that the article is not "scoured wool." It seems clear, from the testimony, that it is not what is commercially so designated. But the language of the statute which refers to wool imported "scoured," and in some other than the ordinary condition in which such wool is commonly imported, is not intended to describe what is commercially designated "scoured wool." The change worked upon it, to produce the new condition at once distinguishes it. It is no longer in the condition to which the term, commercially used, applies. If it came in the condition of what is commercially known as "scoured wool," it necessarily would not fall within the

provision imposing a double duty. Congress contemplated that such wool might be changed by additional work or manipulation, and brought here in other than the ordinary condition in which it was customarily brought, and therefore imposed the penalty of a double duty, where this is done. If therefore this wool was imported scoured, and in a condition other than that in which such wool was customarily imported in March, 1883, and previously, it fell within the provision referred to, and the duty assessed is right. It would follow from what the court has said (though the case is submitted to you on the evidence) that the plaintiff is entitled to recover the amount of its claim.

It is agreed by the parties that if the jury finds for the plaintiff, it shall also find specially and separately, whether the tops which were broken into fragments constituting this importation, were so broken for the purpose of changing the condition of the wool from tops into the fragments resembling waste, for the purpose of evading the duty to which the wool, in the form of tops, would be subjected on importation to this country, or evading duty to which the importer believed the tops would be liable. Thus you are in addition to pass separately upon the question stated. It is in writing, will be sent out, and you will know how to answer it. The decision of the customs officers not only determined, *prima facie*, that the wool imported was in other than the condition in which such wool was imported in 1883 and before, but, also, that it was changed from one condition to another for the purpose of avoiding duty. This latter you will observe is a different question from the one considered in the remarks made to you a few moments ago. As respects this it is unimportant whether the wool is brought here in a condition other than that in which it was before imported. It may have come habitually in the same condition before, and yet if it has been intentionally changed from another condition to this for the purpose of evading duty,—that is, to get it in free of duty, or at a reduced rate,—the importation falls within the provision of the statute imposing a double duty. Here the wool was changed from the condition of "wool tops" to that in which you see it, resembling waste. If the object of so changing its condition was to avoid the payment of duty such as would be levied on tops, or as the importer supposed would be levied on tops, the assessment made by the customs officers was right. What was the object of changing the condition of this wool from tops to the fragments in which you see it? Why were the tops torn up after having been made? You have heard the evidence. You have heard the British witnesses who were examined, and who tell you of the custom which has arisen there of tearing up tops within a few years for importation to this country. You will judge what the object is. You must determine whether it is to avoid the duty to which it was believed the tops would be subjected,—whether it is to get this wool in as "waste" at a lower rate of duty. There is no suggestion that the tops torn up to make this importation were imperfect or damaged. Witnesses have testified that when such tops are torn up it is with a view to transportation here. They have also testified that the tops are worth more in this country, in

v.46F.no.6—30

the sound condition in which you see the top before you, than in the fragments after being torn up. It is. for you to say what the object of tearing these tops up was. If you find they were torn for the purpose of avoiding duty, you will say so in answering the question put by the agreement. If you find that they were not torn up dishonestly, that they were not torn up with a view to evading duty, you will then say so.

I disaffirm the first' point presented by the defendant. I cannot affirm any of the points in terms, and I think they are sufficiently answered in what is said in the general charge. The verdict was in favor of the plaintiff, and the jury found as a special fact that the article was broken into the form in which it was imported for the purpose of evading the duty.

